**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

IN RE:

ZEIGER CRANE RENTAL, INC., ATLANTIC
LEASING, INC., and DYER ROAD
PROPERTY LLC,

          Debtors.

Case No.  11-14183-EPK
(Jointly Administered)

Chapter 11

/

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION

Michael D. Seese
HINSHAW & CULBERTSON LLP
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone:  954-467-7900
Facsimile:  954-467-1024

Dated: August 10, 2011
      West Palm Beach, Florida

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Zeiger Crane Rental, Inc. ("Zeiger"), Atlantic Leasing, Inc. ("Atlantic Leasing") and Dyer Road Property, LLC ("Dyer"), propose the following First Amended Joint Plan of Reorganization under section 1121(a) of the Code:

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

*"Actions"* shall mean all actions that a trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtors or the Estates against any Person.

*"Administrative Claim"* shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(2) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

*"Administrative Claimant"* shall mean the holder of an Administrative Claim.

*"Administrative Claims Bar Date"* shall mean _____, 2011, the last day for Creditors to file a request for allowance and payment of Administrative Claims.

*"Affiliate"* shall mean with respect to any Person, any other Person that would fall within the definition assigned to such term in section 101(2) of the Code, if such Person was a Debtor in a case under the Code.

*"Allowed Amount"* shall mean with respect to a Claim, (a) the amount of a Claim that was listed in any of the Debtors' Schedules as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

18513727v1 0920630 75377

*"**Allowed Claim**"* shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

*"**Allowed Equity Interest**"* shall mean any Equity Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

*"**Article**"* shall mean one of the numbered Articles of the Plan.

*"**Assets**"* shall mean all of the right, title, and interest of any of the Debtors in and to any Property of the Estates, whether tangible or intangible.

*"**Assumed Contract**"* shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the parties) that is assumed by any of the Debtors pursuant to the Plan.

*"**Atlantic Leasing Case**"* shall mean Case No. 11-14185-BKC-EPK.

*"**Avoidance Actions**"* shall mean the Actions pursuant to Chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542-553 of the Code.

*"**Ballot**"* shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

*"**Ballot Deadline**"* shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

*"**Bar Date**"* shall mean May 19, 2011, the last date for Creditors and holders of Equity Interests to have filed proofs of Claims or Equity Interests in the Cases.

*"**Business Day**"* shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in West Palm Beach are authorized or required to close.

*"**Cases**"* shall collectively mean the Atlantic Leasing Case, Dyer Case and Zeiger Case pending before the United States Bankruptcy Court for the Southern District of Florida.

*"**Cash**"* shall mean legal tender of the United States of America.

*"**Claim**"* shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

18513727v1  0920630 75377

"*Class*" shall mean a group of Claims or Equity Interests classified together pursuant to Article IV of the Plan.

"*Class 1*" shall mean the Allowed Other Priority Claims, as described, classified and treated in Section 4.01 of this Plan.

"*Class 2*" shall mean the Allowed Secured Claim of People's United Equipment Finance Corporation, as described, classified and treated in Section 4.02 of this Plan.

"*Class 3*" shall mean the Allowed Secured Claim of FCC Equipment Financing, Inc., as described, classified and treated in Section 4.03 of this Plan.

"*Class 4*" shall mean the Allowed Secured Claim of Kelly Tractor Company, as described, classified and treated in Section 4.04 of this Plan.

"*Class 5*" shall mean the Allowed Secured Claim of TCF Equipment Finance, Inc., as described, classified and treated in Section 4.05 of this Plan.

"*Class 6*" shall mean the Allowed Secured Claim of Ford Motor Credit Company, LLC, as described, classified and treated in Section 4.06 of this Plan.

"*Class 7*" shall mean the Allowed Secured Claim of Palm Beach County, as described, classified and treated in Section 4.07 of this Plan.

"*Class 8*" shall mean the Allowed Other Secured Claims, as described, classified and treated in Section 4.08 of this Plan.

"*Class 9*" shall mean the Allowed Unsecured Claims, as described, classified and treated in Section 4.09 of this Plan.

"*Class 10*" shall mean the Allowed Equity Interests, as described, classified and treated in Section 4.10 of this Plan.

"*Code*" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"*Collateral*" shall mean any property or interest in any Property of the Estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

"*Confirmation Date*" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"*Confirmation Hearing*" shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

18513727v1  0920630  75377

"*Confirmation Order*" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponents desire and shall otherwise be in a form and substance satisfactory to the Proponents.

"*Court*" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"*Creditor*" shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"*Debtors*" or "*Debtors-in-Possession*" shall collectively mean Zeiger, Atlantic Leasing and Dyer Road. Any reference to the "Debtors" shall also include the Debtors in their capacity as a Debtors-in-possession in these Cases, and vice-versa.

"*Disclosure Statement*" shall mean the Disclosure Statement filed by the Proponents in connection with the Plan and approved by the Court for submission to Creditors as the same may be amended from time to time.

"*Disputed Amount*" shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

"*Disputed Claim*" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed pursuant to Section 6.05 of this Plan or otherwise, or such other dates as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"*Disputed Claims Reserve*" shall have the meaning set forth in Section 6.04(a) of the Plan.

"*Disputed Equity Interest*" shall mean any Equity Interest which has not yet been allowed and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated.

"*Distribution*" shall mean funds to be paid to holders of Claims pursuant to Article II, III, IV and VI of the Plan.

"*Distribution Date*" shall mean the dates upon which Distributions may be made pursuant to Article IV and VI of the Plan.

"*Docket*" shall mean the docket maintained in these jointly administered Cases by the Clerk of the Court.

18513727v1 0920630 75377

***"Dyer Case"*** shall mean Case No. 11-14188-BKC-EPK.

***"Effective Date"*** shall mean the date upon which the last of the conditions precedent to the occurrence of the Effective Date set forth in Section 10.02 of the Plan occurs.

***"Equity Interest"*** shall mean any ownership, membership or equity interest in the Debtors, including without limitation, equity interests or other rights to purchase any ownership or equity interest in the Debtors.

***"Estates"*** shall mean the Estates created in these Cases pursuant to section 541 of the Code.

***"Executory Contract"*** shall mean a contract or unexpired lease to which any of the Debtors is a party and that is executory within the meaning of section 365 of the Code.

***"Face Amount"*** shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

***"FCC"*** shall mean Caterpillar Financial Services Corporation d/b/a FCC Equipment Financing, Inc., the holder of the Allowed Class 3 Claim.

***"Fee Request"*** shall mean an application or request for payment by the Estates of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

***"Filing Date"*** shall mean February 18, 2011, the date on which the Debtors commenced these Cases by filing voluntary petitions under Chapter 11 of the Code.

***"Final Order"*** shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponents, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponents may waive such requirement in accordance with the Plan.

***"Ford Motor Credit"*** shall mean Ford Motor Credit Company, LLC, the holder of the Allowed Class 6 Claim.

18513727v1  0920630 75377

*"Impaired"* shall mean an Allowed Claim or Equity Interest that is Impaired within the meaning of section 1124 of the Code.

*"Insider(s)"* shall mean those Persons defined in section 101(31)(B) of the Code.

*"Kelly"* shall mean Kelly Tractor Company, the holder of the Allowed Class 4 claim.

*"Late Filed Claim"* shall mean a Claim filed after the Bar Date.

*"Lien"* shall mean a charge against or interest in any item of Property of the Estates to secure payment of a debt or performance of an obligation.

*"Net Proceeds"* shall mean the amount remaining from recoveries in Actions less attorneys' fees, costs and related expenses.

*"Other Priority Claims"* shall mean a Claim (other than an Administrative Claim or Priority Tax Claim) that is entitled to priority under section 507 of the Code.

*"Other Secured Claims"* shall mean Allowed Secured Claims other than the Allowed Class 2 through Class 7 Claims.

*"Person"* shall mean any individual, sole proprietorship, equity, joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

*"Petition Date"* shall mean the Filing Date.

*"Plan"* shall mean the Debtors' First Amended Joint Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

*"People's"* shall mean People's United Equipment Finance Corporation, the holder of the Allowed Class 2 Claim.

*"Post-Confirmation Administrative Claim"* shall mean a Claim for services rendered or expenses incurred after the Confirmation Date in connection with this Case.

*"Post-Petition Interest"* shall mean all interest accrued but unpaid after the Petition Date that is awarded by the Court on account of any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

*"Pre-Petition"* shall mean prior to the Filing Date.

*"Priority Claims"* shall mean a Claim (other than an Administrative Claim or Priority Tax Claim) that is entitled to priority under section 507(a) of the Code.

***"Priority Tax Claim"*** shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

***"Pro Rata"*** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class, unless otherwise defined in the Plan.  Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient consideration available to make a Pro Rata Distribution to the holder of such Disputed Claim upon final resolution of the dispute.

***"Professional"*** shall mean any professional employed in these Cases pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

***"Property of the Estates"*** shall mean the property defined in section 541 of the Code.

***"Proponents"*** shall mean the Debtors.

***"Rejected Contract"*** shall mean an Executory Contract that is rejected at any time during these Cases or pursuant to Article VII of the Plan.

***"Rejection Claim"*** shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

***"Rules"*** shall mean the Federal Rules of Bankruptcy Procedure.

***"Schedules"*** shall mean the Schedules of assets and liabilities originally filed by each of the Debtors with the Court and as the same may be amended from time to time by any of the Debtors.

***"Section"*** shall mean a numbered subsection of any Article of the Plan.

***"Secured Claim"*** shall mean a Claim secured by a Lien on property in which the any of the Estates has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in any of the Estates' interest in such property or to the extent of the amount subject to set-off.

***"Secured Creditor"*** shall mean the holder of a Secured Claim.

***"Secured Tax Claims"*** shall mean ad valorem taxes assessed against the real property owned by any of the Debtors in the ordinary course of their businesses.

***"Substantial Consummation"*** shall mean that the Plan shall be deemed to be substantially consummated in accordance with sections 1101 and 1127(b) of the Code.

8

**"*TCF*"** shall mean TCF Equipment Financing, Inc., the holder of an Allowed Class 5 Claim.

**"*Unimpaired*"** shall mean an Allowed Claim or Allowed Equity Interest that is not Impaired within the meaning of section 1124 of the Code.

**"*Unsecured Claim*"** shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

**"*Unsecured Creditor*"** shall mean the holder of an Unsecured Claim.

**"*Zeiger Case*"** shall mean Case No. 11-14183-BKC-EPK.

**"*Rules of Construction and Interpretation*"**

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a)     The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."

(b)     Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c)     All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS:
### ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS
### AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows:

### 2.01.   Allowed Administrative Claims.

Administrative Claims are Claims constituting a cost or expense of the administration of the Cases allowed under sections 503(b) and 507(a)(2) of the Code.  Such Claims include any actual and necessary costs and expenses of preserving the Estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their businesses, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent  allowed by the Court under section 330, 331 or 503 of

18513727v1  0920630 75377

the Code, all costs associated with the cure of any executory contracts and unexpired leases between the Debtors and any Person, and any fees or charges assessed against the Estates of the Debtors under section 1930 of title 28 of the United States Code.

Except as otherwise provided herein, and except to the extent that any entity entitled to payment of any Allowed Administrative Claim agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim by Final Order, or as soon thereafter as is reasonably practicable.

### A.    Ordinary Course Claims

Allowed Administrative Claims representing liabilities incurred by the Debtors in Possession in the ordinary course of their businesses shall be (a) assumed by the Reorganized Debtors and paid in full and performed in the ordinary course of business consistent with past practices and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, or (b) paid in full in Cash on the later of the Effective Date of the Plan or the date on which such Claim becomes an Allowed Administrative Claim by Final Order of the Court.

### B.    Professional Fee and Expense Claims

Compensation of Professionals and reimbursement of expenses incurred by Professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "Professional Fee and Expense Claims"). All payments to Professionals for Professional Fee and Expense Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fee and Expense Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 of the Code and Rule 2016 by the date fixed by the Court.

The time for filing objections to applications for allowance and payment of Professional Fee and Expense Claims, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set by order of the Court.

### 2.02.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in full in Cash on the later of the Effective Date of the Plan or the date on which such Claim becomes an Allowed Priority Tax Claim by Final Order of the Court.

10

**2.03.    United States Trustee's Fees.**

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of these Cases by the issuance of a Final Decree by the Court, upon the entry of an order of this Court dismissing these Cases, or upon entry of an order converting these Cases to another chapter under the Code. The Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate post-confirmation operating report indicating disbursement for the relevant periods.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS[1]

For purposes of this Plan, Claims against, and Equity Interests in, the Debtors shall be classified as follows:

| **Class** | **Description** | **Status** | **Voting Status** |
|---|---|---|---|
| Class 1 | Allowed Other Priority Claims | Unimpaired | No. Deemed to Accept |
| Class 2 | Allowed Secured Claim of People's | Impaired | Yes |
| Class 3 | Allowed Secured Claim of FCC | Impaired | Yes |
| Class 4 | Allowed Secured Claim of Kelly | Impaired | Yes |
| Class 5 | Allowed Secured Claim of TCF | Impaired | Yes |
| Class 6 | Allowed Secured Claim of Ford Motor Credit | Unimpaired | No |
| Class 7 | Allowed Secured Claim of Palm Beach County | Unimpaired | No |
| Class 8 | Allowed Other Secured Claims | Impaired | Yes |
| Class 9 | Allowed Unsecured Claims | Impaired | Yes |
| Class 10 | Allowed Equity Interests | Unimpaired | No |

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 4.01.    Class 1. Allowed Other Priority Claims

(a)    Description.    Class 1 consists of the Allowed Other Priority Claims which are entitled to priority in accordance with section 507(a) of the Code (other than Administrative Claims and Priority Tax Claims).

11

(b)    <u>Treatment</u>. Each holder of an Allowed Other Priority Claim shall receive, in full satisfaction, release and exchange for such Claim, Cash in an amount equal to the amount of such Allowed Other Priority Claim in accordance with section 1129(a)(9) of the Code on the later of the Effective Date or the date such Claim becomes an Allowed Class 1 Claim, or as soon thereafter as is reasonably practicable.

(c)    <u>Impairment</u>. The Class 1 Claim is Unimpaired.

**4.02.    Class 2. Allowed Secured Claim of People's**

(a)    <u>Description</u>. Class 2 consists of the Allowed Secured Claim held by People's.

(b)    <u>Treatment</u>. The Allowed Class 2 Claim shall be treated as follows:

(i)    The terms and conditions of the Settlement attached to this Plan as Exhibit "A" are incorporated in their entirety by reference. In the event of any inconsistency between the Settlement and the Plan, the Settlement shall prevail;

(ii)    Commencing on the Effective Date of the Plan, People's shall be paid monthly payments equal to the sum of (the "Initial Class 2 Payment"): (x) $30,104.00, <u>plus</u> (y) an additional amount calculated by amortizing the difference between the Allowed Claim of People's (as of the Effective Date) <u>and</u> the amount outstanding as of the Effective Date of the Plan on the promissory note secured by a mortgage on real property owned by Dyer Road at 4651 Dyer Boulevard, Riviera Beach, Florida 33407 (the "Real Estate") based on a sixty (60) month amortization using an interest rate of eight and one-half percent (8.5%) per annum. The Initial Class 2 Payment shall continue until the Real Estate is redeemed or sold consistent with the terms and conditions of the Settlement; and

(iii)    Commencing in the month following disposition of the Real Estate consistent with the terms and conditions of the Settlement, the Initial Class 2 Payment shall be recalculated to an amount equal to the value of the accounts receivable and other Collateral securing the Allowed Class 2 Claim (determined as of the Effective Date) based on a sixty (60) month amortization using an interest rate of eight and one-half percent (8.5%) per annum (the "Recalculated Class 2 Payment"). The Recalculated Class 2 Payment shall continue for the number of months remaining on the initial sixty (60) month amortization; and

(iv)    The amount of the Allowed Claim of Peoples as of the Effective Date, <u>less</u> the value received by People's for the Real Estate, <u>less</u> the value of the accounts receivable and other Collateral (other than the cranes surrendered or transferred to People's under the Settlement) securing the Allowed Class 2 Claim (valued as of the Effective Date), <u>less</u> the value received by People's for any other Collateral securing the Allowed Class 2 Claim, shall be an Allowed Class 9 Claim; and

(v)    People's shall refrain from taking any action against any guarantor of the Allowed Claim of People's until the first to occur of (x) a Termination Event as defined under the Settlement, or (y) the redemption or sale of the Real Estate consistent with the Settlement; and

18513727v1  0920630  75377

(vi)   People's shall retain its Lien against all Collateral against which People's held a lien as of the Petition Date (unless otherwise disposed of in the ordinary course or consistent with the Settlement) in order to secure the Allowed Class 2 Claim.

(c)    <u>Impairment</u>. The Class 2 Claim is Impaired.

**4.03    Class 3. Allowed Secured Claim of FCC**

(a)    <u>Description</u>. Class 3 consists of the Allowed Secured Claim of FCC.

(b)    <u>Treatment.</u> The Allowed Class 3 Claim shall be treated as follows:

(i)    The Allowed Amount of the Class 3 Claim shall be Three Million Five Hundred Thousand Dollars ($3,500,000.00).   Commencing thirty (30) days following the Effective Date of the Plan, the holder of the Allowed Class 3 Claim shall be paid twelve (12) equal monthly payments of interest only calculated using an interest rate of seven percent (7%) per annum.  Commencing in the fourteenth (14th) month following the Effective Date of the Plan, the holder of the Allowed Class 3 Claim shall be paid seventy-two (72) equal monthly payments of principal and interest based on a seventy-two (72) month amortization calculated using an interest rate of seven percent (7%) per annum.  The holder of the Allowed Class 3 Claim shall retain its first-priority Lien against the collateral listed on Exhibit "B" to this Plan; and

(ii)   The difference between the Allowed Claim of FCC and the Allowed Class 3 Claim shall be treated as an Allowed Class 9 Claim.

(c)    <u>Impairment.</u> The Allowed Class 3 Claim is Impaired.

**4.04.    Class 4. Allowed  Secured Claim of Kelly**

(a)    <u>Description.</u> Class 4 consists of Allowed Secured Claim of Kelly.

(b)    <u>Treatment.</u> The Allowed Class 4 Claim shall be treated as follows:

(i)    The Allowed Amount of the Class 4 Claim shall be Seven Hundred Thousand Dollars ($700,000.00).  Commencing thirty (30) days following the Effective Date of the Plan, the holder of the Allowed Class 4 Claim shall be paid twelve (12) equal monthly payments of interest only calculated using an interest rate of seven percent (7%) per annum. Commencing in the fourteenth (14th) month following the Effective Date of the Plan, the holder of the Allowed Class 4 Claim shall be paid seventy-two (72) equal monthly payments of principal and interests based on a seventy-two (72) month amortization calculated using an interest rate of seven percent (7%) per annum.  The holder of the Allowed Class 4 Claim shall retain its first-priority Lien against the collateral listed on Exhibit "B" to this Plan; and

(ii)   The difference between the Allowed Claim of Kelly and the Allowed Class 4 Claim shall be treated as an Allowed Class 9 Claim.

(c)    <u>Impairment</u>. The Class 4 Claim is Impaired.

18513727v1 0920630 75377

**4.05.**  **Class 5. Allowed Secured Claim of TCF**

(a)    Description. Class 5 consists of Allowed Secured Claim of TCF.

(b)    Treatment. The Allowed Class 5 Claim shall be treated as follows:

(i)    The Allowed Amount of the Class 5 Claim shall be One Million Six Hundred Thousand Dollars ($1,600,000.00). Commencing thirty (30) days following the Effective Date of the Plan, the holder of the Allowed Class 5 Claim shall be paid twelve (12) equal monthly payments of interest only calculated using an interest rate of seven percent (7%) per annum. Commencing in the fourteenth (14th) month following the Effective Date of the Plan, the holder of the Allowed Class 5 Claim shall be paid seventy-two (72) equal monthly payments of principal and interest based on a seventy-two (72) month amortization calculated using an interest rate of seven percent (7%) per annum. The holder of the Allowed Class 5 Claim shall retain its first-priority Lien against the collateral listed on Exhibit "B" to this Plan; and

(ii)    The difference between the Allowed Claim of TCF and the Allowed Class 5 Claim shall be treated as an Allowed Class 9 Claim.

(c)    Impairment. The Class 5 Claim is Impaired.

**4.06**  **Class 6: Allowed Secured Claim of Ford Motor Credit**

(a)    Description. Class 6 consists of the Allowed Secured Claim of Ford Motor Credit Company, LLC.

(b)    Treatment. The holder of the Allowed Class 6 Claim shall be treated as follows:

(i)    The holder of the Allowed Class 6 Claim shall be paid in the ordinary course of business by the Reorganized Debtors. The Reorganized Debtors shall assume the indebtedness owed to the holder of the Allowed Class 6 Claim, and such holder shall continue to be paid total monthly payments of principal and interest in the amount of $5,129.63 per month in accordance with the terms and conditions of the financing agreements entered by the parties; and

(ii)    The holder of the Allowed Class 6 Claim shall retain its first-priority Lien against the Collateral identified on Exhibit "B" to this Plan.

(c)    Impairment. The Class 6 Claim is Unimpaired.

**4.07.**  **Class 7. Allowed Secured Claim of Palm Beach County**

(a)    Description. Class 7 consists of Allowed Secured Claim of Palm Beach County for 2011 ad valorem taxes. These taxes are secured by a first priority Lien against Dyer Road's real property in accordance with applicable Florida law.

(b)    Treatment. After the 2011 ad valorem taxes are calculated and the tax bill provided to the Debtors, the Allowed Class 6 Claim shall be paid in the ordinary course of business no later than March 31, 2012.

14

(c)    Impairment.  The Class 7 Claim is Unimpaired.

**4.08.  Class 8.  Allowed Other Secured Claims**

(a)    Description.  Class 8 consists of Allowed Other Secured Claims, other than the Allowed Class 2 through 7 Claims.

(b)    Treatment.  The holders of Allowed Other Secured Claims shall be satisfied, to the extent the Collateral securing such Other Secured Claim has not been previously sold or abandoned, as follows:  (i) the holder shall retain the Lien securing such Other Secured Claim, and such holder shall receive deferred cash payments totaling at least the allowed amount of such Other Secured Claim, of a value, as of the Effective Date, consistent with 11 U.S.C. §§ 506(b) and 1129(b)(2)(A)(i); (ii) from the Collateral securing each such Claim in full satisfaction, release and discharge of such Claim in accordance with 11 U.S.C. § 1129(b)(2)(A)(ii); (iii) the indubitable equivalent of such Other Secured Claim in accordance with 11 U.S.C. § 1129(b)(2)(A)(iii); or (iv) as otherwise authorized by the Code or agreed to by the holder of such Claim and the Reorganized Debtors.

(c)    Impairment.  The Class 8 Claims are Impaired.

**4.09.  Class 9.  Allowed Unsecured Claims**

(a)    Description.  Class 9 consists of Allowed Unsecured Claims.

(b)    Treatment.  Commencing thirty (30) days following the Effective Date of the Plan, or as soon thereafter as is reasonably practicable based on the availability of Net Proceeds of Actions, each holder of an Allowed Class 9 Claim shall receive such holder's Pro Rata share of Distributions of Net Proceeds of Actions. Notwithstanding anything herein to the contrary, the Debtors will seek approval of a resolution of any and all Avoidance Actions against Mr. Steve Zeiger, including, without limitation, any party, including his family members, who received payments from the Debtors to or for the benefit of Steve Zeiger (the "S. Zeiger Avoidance Action Resolution").  Approval of the S. Zeiger Avoidance Action Resolution (discussed more fully in Section 9.12 of the Plan) shall be subject to (a) the entry of a Confirmation Order, (b) the Effective Date of the Plan, and (c) Class 9 voting to support the Plan.  If the S. Zeiger Avoidance Action Resolution is approved, then commencing in the thirteenth (13th) month following the Effective Date of the Plan, and each month thereafter for a period of sixty (60) months, Mr. Zeiger shall pay $2,500.00 (the "S. Zeiger Contribution") to Zeiger Crane Rental, Inc. for purposes of distributing the S. Zeiger Contributions to the holders of the Zeiger Distributable Claims.  The total amount of S. Zeiger Contributions to be distributed will be $150,000.00.  If the S. Zeiger Avoidance Action Resolution is approved, Mr. Zeiger will subordinate any Claims he may possess against the Debtors and Reorganized Debtors pending satisfaction of the S. Zeiger Contributions.  The Plan will represent a request to approve the S. Zeiger Avoidance Action Resolution under Rule 9019 of the Bankruptcy Rules.

(c)    Impairment.  The Class 9 Claims are Impaired.

**4.10.  Class 10.  Allowed Equity Interests**

15

(a)     Description.  Class 10 consists of Allowed Equity Interests.  Equity Interests consist of any membership interest, share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtors, whether or not transferrable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b)     Treatment.  Holders of Allowed Equity Interests shall retain their Equity Interests under the Plan.

(c)     Impairment.  The Class 10 Claims are Unimpaired.


# ARTICLE V

## SUBSTANTIVE CONSOLIDATION OF ZEIGER AND ATLANTIC LEASING

As of the Petition Date, there were three (3) separate Debtors. For the reasons set forth herein, the Debtors seek substantive consolidation of Zeiger and Atlantic Leasing solely for voting purposes and Distributions hereunder.  On the Effective Date, Zeiger and Atlantic Leasing will be substantively consolidated pursuant hereto and in accordance with the Plan.

In support of substantive consolidation, the Debtors assert that many of the factors set forth in the applicable decisional law supporting limited substantive consolidation as proposed hereunder are present in the Zeiger Case and Atlantic Leasing Case. See *Eastgroup Props. v. Southern Motel Assocs., Ltd.*, 935 F.2d 245 (11th Cir. 1991)(movant must demonstrate that (i) there is a substantial identity between entities to be consolidated, and (ii) consolidation is necessary to avoid some harm or to realize some benefit); *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 769-70 (9th Cir. 2000).  A detailed discussion of the facts and circumstances supporting substantive consolidation is contained in the Disclosure Statement.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Code, effective as of the Effective Date, of the substantive consolidation of the Zeiger and Atlantic Leasing, solely for voting purposes and Distributions hereunder, and for no other purpose, as set forth above.

Specifically, on and after the Effective Date with respect to both Zeiger and Atlantic Leasing, all assets and liabilities shall be treated as though they were pooled solely for purposes of:  (a) voting on the Plan, and (b) Distributions under the Plan.  No Distribution shall be made hereunder on account of any Intercompany Claim held by Atlantic Leasing or Zeiger, and every Claim filed or to be filed in the Cases of either Atlantic Leasing or Zeiger shall be deemed filed against both entities and shall be treated as one obligation by Atlantic Leasing and Zeiger. Notwithstanding the substantive consolidation of the Zeiger and Atlantic Leasing, respectively, as provided herein, the substantive consolidation shall be solely for purposes of voting and Distributions and specifically shall not: (a) affect the legal and organizational structure of each

18513727v1  0920630 75377

such Debtors from and after the Effective Date; (b) destroy or otherwise affect the separate corporate existence of each Debtors and the ownership interest in each Debtors; or (c) divest any Debtors of any tax attributes; or (d) affect any statutory fees paid by, or accrued in respect of, any Debtors to the United States Trustee or the Clerk of the Court from the Petition Date through the Effective Date.

**This Plan shall be deemed to be a motion, pursuant to Rule 9013, by the Debtors for limited and partial substantive consolidation with respect to the Plan as set forth herein. The Debtors reserve the right to supplement the facts and law supporting the request for partial or limited substantive consolidation herein on or before the Confirmation Date. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court at the Confirmation Hearing. Failure to timely object to substantive consolidation may result in consolidation of the Debtors in accordance herewith, without further hearing.**

## ARTICLE VI

### PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS[2]

#### 6.01    Voting of Claims and Equity Interests

Each holder of an Allowed Claim or Equity Interest in an Impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

#### 6.02    Nonconsensual Confirmation ("Cramdown")

Notwithstanding that any Impaired Class of Claims or Equity Interests entitled to vote does not accept the Plan by the statutory majorities required by section 1126(c) of the Code, the Debtors are requesting confirmation of the Plan under the cram down provisions of section 1129(b) of the Code.

#### 6.03    Method of Distribution Under the Plan

(a)    Subject to Rule 9010, and except as otherwise provided in this Section 6.03 of the Plan, all Distributions under the Plan shall be made by the Disbursing Agent to the holder of each Allowed Claim at the address of such holder as listed on the Schedules unless the Debtors or the Disbursing Agent have been notified in writing of a change of address, including by the filing of

---

[2] The provisions of Sections 6.02 and 6.05 through 6.12 are subject to the provisions of the Settlement solely with respect to People's.

18513727v1 0920630 75377

a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    No payment of Cash less than one hundred dollars ($100.00) shall be made to any holder of a Claim unless a request therefor is made in writing to the Disbursing Agent or unless the Distribution is a final Distribution.

(e)    When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual Distribution shall be rounded as follows:  (i) fractions of ½ or greater shall be rounded to the next higher whole number, and (ii) fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this Section 6.03(e) of the Plan.

(f)    Any Distributions of Cash or other property under the Plan which are unclaimed for a period of six (6) months after the Distribution Date shall be vested in the Reorganized Debtors and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

(g)    At the close of business on the Effective Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Disbursing Agent shall have no obligation to recognize any transfer of any Claims occurring after the Effective Date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Effective Date and prior to the Effective Date.  The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Effective Date.

### 6.04    Distributions Withheld for Disputed General Unsecured Claims

(a)    Establishment and Maintenance of Reserve

On any Distribution Date, the Disbursing Agent shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to one-hundred percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtors or the Court in accordance with Section 6.09 of the Plan (the "Disputed Claims Reserve").

(b)    Property Held in Disputed Claims Reserve

Cash in the Disputed Claims Reserve shall (together with all other accretions or distributions thereon) be held in trust by the Disbursing Agent for the benefit of the potential

18513727v1 0920630 75377

recipients of such Cash and shall not constitute property of the Debtors or the Reorganized Debtors.

(c)     Distributions Upon Allowance of Disputed General Unsecured Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive Distributions of Cash and any other consideration from the Disputed Claims Reserve from the Disbursing Agent within ten (10) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.    Such Distributions shall be made in accordance with the Plan.

(d)     No Surplus Distributions to Holders of Allowed General Unsecured Claims.

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtors.

(e)     Expenses of Disputed Claims Reserve

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Disbursing Agent on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtors.

### 6.05     Procedures for Allowance or Disallowance of Disputed Claims

(a)     Objections to and Resolution of Administrative Claims and Claims

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtors or the Reorganized Debtors, as the case may be, shall have the exclusive right to make and file objections to Administrative Claims and Claims subsequent to the Effective Date.    All objections shall be litigated to Final Order, if necessary.    The Debtors or the Reorganized Debtors, as the case may be, shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court, except as otherwise provided herein.    Unless otherwise ordered by the Court, the Debtors or the Reorganized Debtors, as the case may be, shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court.    The Debtors and the Reorganized Debtors reserve the right to object to Administrative Claims as such claims arise in the ordinary course of business.    The Disbursing Agent shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

(b)     No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no

18513727v1 0920630 75377

payment or Distribution provided under the Plan shall be made on account of such unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

(c)     Disallowed Claims

All Claims or Equity Interests held by Persons against whom the Debtors or the Reorganized Debtors has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims or Equity Interests pursuant to section 502(d) of the Code and holders of such Claims or Equity Interests shall not be entitled to vote to accept or reject the Plan.  Claims or Equity Interests that are deemed disallowed pursuant to this Section 6.05(c) of the Plan shall continue to be disallowed for all purposes until the Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

### 6.06    Disbursing Agent

The Reorganized Debtors shall act as Disbursing Agent under the Plan with respect to all Distributions on account of Allowed Claims, which shall be distributed from the account of Zeiger Crane Rental, Inc.  Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan.  Each Disbursing Agent will serve without bond.  The Disbursing Agent shall hold all reserves and accounts pursuant to the Plan, including the Disputed Claims Reserve.

### 6.07    Setoffs and Recoupment

The Debtors may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any setoff or recoupment right they may have against the holder of such Claim.

### 6.08    Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 6.09    Estimations of Claims

For purposes of calculating and making Distributions under the Plan, the Reorganized Debtors shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Reorganized Debtors may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtors previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will

retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the foregoing objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 6.10    No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors, or any of their respective Professionals, consultants, partners or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 6.11    Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors, the Disbursing Agent or the Estates, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 6.12    Post-Petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, by order of the Court, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, Post-Petition Interest shall not accrue on or after the Petition Date on account of any Claim.

18513727v1 0920630 75377

# ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01    Assumption or Rejection of Executory Contracts and Unexpired Leases

#### A.    Executory Contracts and Unexpired Leases

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Confirmation Hearing; *provided, however*, that the Debtorss shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtors shall provide notice of any amendments to the Assumption List to the non-Debtors parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

#### B.    Schedules of Rejected Executory Contracts and Unexpired Leases; Inclusiveness

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List and (ii) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

22

C.    **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtors' policies of insurance.

D.    **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption by the Debtors of the executory contracts and unexpired leases assumed and assigned pursuant to Article VI of the Plan, and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

**7.02    Cure of Defaults**

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the motion or the Assumption List. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount disclosed on the Assumption List, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties, within sixty (60) days after the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount.

**7.03    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment

to the Assumption List. Any Claim not filed within such time will be forever barred from assertion against the Debtors, the Reorganized Debtors, the Estates, and Property of the Estates. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

### 7.04    Indemnification Obligations

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of their present and former partners or employees who served as partners, respectively, on or after the Petition Date, pursuant to state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

### 7.05    Compensation and Benefit Programs

Except as provided in the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their shareholders, members or employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan. If assumed, the Debtors reserve the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

## ARTICLE VIII

## PROVISIONS REGARDING CORPORATE GOVERNANCE

On the Effective Date, the management, control and operation of the Reorganized Debtors shall become the general responsibility of the managing member(s) and boards of directors of the Reorganized Debtors, which shall, thereafter, have the responsibility for the management, control and operation of the Reorganized Debtors.

### 8.01    Meetings of Stockholders/Managing Member(s)

In accordance with the applicable Reorganized Debtors' operating agreement, or certificates of incorporation and bylaws, as the same may be amended from time to time, the first annual meeting of the members or stockholders of Reorganized Debtors shall be held on a date selected by the managing member(s) or boards of directors.

### 8.02    Bylaws and Certificates of Incorporation

On the Effective Date, the adoption of the applicable Reorganized Debtors' certificate of incorporation and bylaws shall be authorized and approved in all respects to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order, or

18513727v1  0920630 75377

rule, and including without any further action by the stockholders or directors of the Debtors, the Debtors in Possession or the Reorganized Debtors. The applicable Reorganized Debtors' certificate of incorporation shall prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Code, and authorize any other actions necessary to implementing the Plan, subject to further amendment of such certificates of incorporation as permitted by applicable law and the applicable organizational documents.

### 8.03    Selection of Board Members/Managing Member(s)

The initial managing member of Dyer Road shall be Steve Zeiger. The member of te boards of directors of Zeiger and Atlantic Leasing shall be Steve Zeiger. Thereafter, the managing member(s) and members of the boards of directors shall be selected in accordance with the applicable Reorganized Debtors' operating agreement or certificate of incorporation, as the case may be. As of the Effective Date of the Plan, the managing member(s) and members of the initial boards of directors shall in each case serve until their respective resignations or removal in accordance with applicable law, or the applicable organizational documents. Elections, removal and terms of directors and managing member(s) will be in accordance with applicable general corporate and limited liability company law.

### 8.04    Corporate Governance

The business and affairs of the Reorganized Debtors shall be managed by their managing member(s) and boards of directors in accordance with the applicable Reorganized Debtors' operating agreement, bylaws, articles of incorporation and applicable non-bankruptcy law.

### 8.05    Officers/Managing Member(s)

The initial officers of Zeiger and Atlantic Leasing shall be Steve Zeiger – Chief Executive Officer. The initial managing member of Dyer Road shall be Steve Zeiger. After the Effective Date, the managing member(s) and officers of the Reorganized Debtors shall be determined by the member(s) or boards of directors, in each case until their respective resignations or removal in accordance with applicable law and the applicable organizational documents. Mr. Zeiger shall receive an initial annual salary of $250,000.00 (which may be adjusted based on the operating results of the Reorganized Debtors), as well as a $1,000.00 per month vehicle allowance and medical insurance coverage.

## ARTICLE IX

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

### 9.01    General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtors or Reorganized Debtors, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

18513727v1  0920630 75377

Distributions under the Plan shall be made from the Reorganized Debtors' cash flow from operations as more specifically provided for in the Disclosure Statement (Classes 1 through 8), as well as Net Proceeds of Actions (Class 9).

The pro forma financials and supporting schedules are attached to the Disclosure Statement as Exhibit "C." The assumptions for the pro forma financials are included, but essentially the Reorganized Debtors will have the following equipment configurations:

(a)    Crawler Cranes. The Reorganized Debtors will rent three (3) crawler cranes from People's. Four (4) crawler cranes will be financed, two (2) from FCC and one each from TCF and Kelly. The Reorganized Debtors will rent additional cranes post-confirmation and are in the process of finalizing certain rentals.

(b)    Hydraulic Cranes. The Reorganized Debtors will rent two (2) hydraulic cranes from Peoples. One hydraulic crane will be financed with FCC. The Reorganized Debtors will rent five (5) additional cranes post-confirmation.

The Debtors do not anticipate any problems in renting cranes post-confirmation, and rents will be paid based on utilization. Renting cranes will result in lower debt-servicing needs and will enable the Reorganized Debtors to have more flexibility in inventory available to meet demands. Rather than being burdened with debt service associated with the outright acquisition of cranes, the Reorganized Debtors will be able to vary the inventory of cranes based on demand and economy.

Other revenue will be derived from "move in" and "move out" revenue associated with crane rentals, service and repair revenues, trucking, and rental income from the lease of real estate owned by Dyer Road.

Payments to Secured Creditors, other than People's, are based on interest-only payments in Year 1, and followed by six (6) years of principal and interest payments calculated based on a seventy two (72) month amortization using an interest rate of seven percent (7%) per annum. The interest-only period will enable the Reorganized Debtors to ramp-up revenues during the initial year following the Effective Date. As payments convert from interest-only to principal and interest payments, the payments required to be made to People's will decrease at or around the same time, as a result of having redeemed or otherwise disposed of the real estate owned by Dyer Road consistent with the Settlement.

The Debtors project that revenues will gradually increase based on increasing demand for cranes, and due further to the fewer number of crane providers who have survived the recessionary conditions.

**9.02    The Reorganized Debtors**

Except as otherwise provided in the Plan, on the Effective Date of the Plan, all Assets of the Debtors shall be vested in the Reorganized Debtors, and the Reorganized Debtors shall assume all of the Debtors' rights, obligations and liabilities under the Plan.

18513727v1 0920630 75377

### 9.03    Effectiveness of Instruments and Agreements

On the Effective Date, all documents described in and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 9.04    Distributions

Distributions shall be made by the Reorganized Debtors in accordance with the Plan. Distributions (including payment of any required fees to the United States Trustee under 28 U.S.C. § 1930(a)(6) shall be made from the account of Zeiger Crane Rental, Inc.

### 9.05    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the managing member(s) or member(s), or officers and directors of the Debtors or Reorganized Debtors or their successors in interest under the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the applicable general corporation law, without any requirement of further action by the member(s), managing member(s), or officers and directors of the Debtors or Reorganized Debtors.

### 9.06    No Change of Control

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 9.07    Restructuring Transactions

On and after the Effective Date, the Reorganized Debtors may enter into such transactions and may take such actions as may be necessary or appropriate to effect a corporate restructuring of their businesses, subject to the terms, conditions and restrictions set forth in the Bylaws, or otherwise applicable to, the Reorganized Debtors.  Such restructuring may include one or more mergers, consolidations, restructures, dispositions, liquidations, or dissolutions, as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate (collectively, the "Restructuring Transactions").   The actions to effect the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, or

18513727v1 0920630 75377

dissolution pursuant to applicable state law; and (iv) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. The Restructuring Transactions may include one or more mergers, consolidations, restructures, dispositions, liquidations, or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of the Reorganized. In each case in which the surviving, resulting, or acquiring entity in any such transaction is a successor to the Reorganized Debtors, such surviving, resulting, or acquiring corporation will perform the obligations of the Reorganized Debtors pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against the Reorganized Debtors. Notwithstanding anything in this Section 9.07 to the contrary, nothing in this Section 9.07 is intended or should be construed as permitting the Reorganized Debtors to violate, amend or modify the provisions of the Settlement with People's without the prior written consent of People's.

### 9.08    Operation of the Debtors in Possession Between the Confirmation Date and the Effective Date

The Debtors shall continue to operate as Debtors in Possession in the ordinary course, consistent with past practices, subject to the supervision of the Court and pursuant to the Code and the Rules during the period from the Confirmation Date through and until the Effective Date, and any obligation incurred by the Debtors during that period shall constitute a Post-Confirmation Administrative Claim.

### 9.09    Administration After the Effective Date

Except as otherwise provided in this Plan, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules from and after the Effective Date.

### 9.10    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in these Cases under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 9.11    Revesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the Property of the Estates of the Debtors, including, without limitation, the Actions, shall revest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests.

### 9.12    Causes of Action

(a)    As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtors and Debtors in Possession, including, without limitation, the Actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall

18513727v1  0920630  75377

become assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Actions for the benefit of the Estate.

(b)    **The Debtors and the Reorganized Debtors reserve all Actions against third parties, including, without limitation, Avoidance Actions. Avoidance Actions include any Action against any creditor or third party who may have received a transfer of funds or other property from the Debtors within ninety (90) days preceding the Petition Date. Therefore, any party who may have received a payment from the Debtors, as disclosed in response to question 3 of the statements of financial affairs filed in the Cases, may be the subject of a potential Avoidance Action.**

**Notwithstanding anything herein to the contrary, the Debtors will seek approval of a resolution of any and all Avoidance Actions against Mr. Steve Zeiger, including, without limitation, any party, including his family members, who received payments from the Debtors to or for the benefit of Steve Zeiger (the "S. Zeiger Avoidance Action Resolution"). In the two (2) years preceding the Petition Date, the Debtors paid $2,925,657.00 to or for the benefit of Mr. Zeiger.  Assuming a reasonable salary of $290,000.00 per year, the net payments to or for the benefit of Mr. Zeiger were $2,345,657.00 (the "Net 2-Year Payments").    During the one year preceding the Petition Date, the Debtors paid $1,649,600.00 (net of salary) to or for the benefit of Mr. Zeiger (the "Net 1-Year Payments").  During this same two (2) year period, Mr. Zeiger advanced $4,465,000.00 to the Debtors (the "S. Zeiger Advances").**

**The Debtors estimate the total amount of allowed unsecured claims against the Estates are in the amount of $4,281,896.00, excluding any claims of Mr. Zeiger (the "Unsecured Claims").  The Unsecured Claims include the following claims for which Mr. Zeiger may be a co-obligor or may have personally guaranteed the obligation:  (a) FCC ($1,300,000.00); (b) Exact Crane ($872,350.00); (c) Kelly Tractor ($830,481.00); and (d) Sims ($750,000.00) (the "Zeiger Claims").   The amount of the Unsecured Claims, net of the Zeiger Claims, are $529,065.00 (the "Zeiger Distributable Claims").     The Zeiger Distributable Claims represent Unsecured Claims for which Mr. Zeiger is not personally liable in any capacity.**

**Commencing in the thirteenth (13th) month following the Effective Date of the Plan, and each month thereafter for a period of sixty (60) months, Mr. Zeiger shall pay $2,500.00 (the "S. Zeiger Contribution") to Zeiger Crane Rental, Inc. for purposes of distributing the S. Zeiger Contributions to the holders of the Zeiger Distributable Claims.  The total amount of S. Zeiger Contributions to be distributed will be $150,000.00, which represents a return of approximately 37% to the holders of Zeiger Distributable Claims ($150,000.00/$529,065.00).**

**In arriving at the amount of the S. Zeiger Contribution, the Debtors and Mr. Zeiger considered the following:**

(a)    **Without Mr. Zeiger admitting any liability on any Avoidance Actions, the most that Mr. Zeiger could be liable for is (i) $2,345,657.00 under section 548 of the Code (the Net 2-Year Payments), or (ii) $1,649,600.00 under section 547 of the Code (the Net 1-**

Year Payments). If these amounts are added to the Unsecured Claims, and assuming that Mr. Zeiger would have a claim in the amount of any adverse judgment satisfied, the total Unsecured Claims would be either $5,931,496.00 ($1,649,600.00 plus $4,281,896.00) or $6,627,553.00 ($2,345,657.00 plus $4,281,896.00), respectively. After satisfying any adverse judgment under section 550 of the Code, Mr. Zeiger would hold 27.81% ($1,649,600.00/$5,931,496.00) or 35.39% ($2,345,657.00/$6,627,553.00) of the Unsecured Claims. Accordingly, out of the $2,345,657.00 recovered and distributable to holders of Unsecured Claims, Mr. Zeiger would receive $830,128.00 (.3539($2,345,657.00)) and the remaining holders of Unsecured Claims would receive $1,515,529.00 (.6461($2,345,657.00)), assuming the maximum recovery under section 548 of the Code. On the other hand, out of the $1,649,600.00 recovered and distributable to holders of Unsecured Claims, Mr. Zeiger would receive $458,754.00 (.2781($1,649,600.00))and the remaining holders of Unsecured Claims would receive $1,190,846.00 (.7219($1,649,600.00)) assuming the maximum recovery under section 547 of the Code. Consequently, the maximum amounts distributable to holders of Unsecured Claims (excluding any claims of Mr. Zeiger) would be between $1,190,846.00 and $1,515,529.00.

(b)     The Zeiger Distributable Claims represent 12.36% of the Unsecured Claims ($529,065.00/$4,281,896.00) (excluding any claims of Mr. Zeiger). Therefore, the Zeiger Distributable Claims would receive 12.36% of $1,190,846.00 or $1,515,529.00, or $147,129.00 or $187,219.00, respectively. The foregoing does not take into account (i) legal fees and costs associated with litigation, (ii) risks associated with collection, or (iii) any additional claims of Mr. Zeiger.

(c)     Mr. Zeiger intends to approach the holders of the Zeiger Claims (FCC, Kelly, Sims and Exact Crane) and People's in an effort to obtain their agreement to forego any distributions from the S. Zeiger Contributions. If Mr. Zeiger is able to obtain their agreement, the returns for the Zeiger Distributable Claims will be maximized.

(d)     If Mr. Zeiger is sued and does not prevail on any Avoidance Actions for the amount for which he may be exposed, this could have a negative impact on the Debtors' reorganization efforts. Mr. Zeiger's personal assets would be exposed, and Mr. Zeiger would have no resources with which to satisfy claims of People's, FCC and others prior to or when forbearance agreements with such creditors expire. Indeed, the Zeiger Claims have recourse against Mr. Zeiger and may, in the event of default in the forbearance agreements, pursue Mr. Zeiger's personal assets. These creditors do not stand to gain from Mr. Zeiger being pursued on Avoidance Actions. Furthermore, payment of the S. Zeiger Contributions results in the holders of the Zeiger Distributable Claims likely receiving more than if Mr. Zeiger was sued on the Avoidance Actions. Not only would attorneys' fees and costs, as well as other claims, including the Zeiger Claims, dilute any distributions to the Zeiger Distributable Claims, but a risk of collection would likely exist.

The S. Zeiger Avoidance Action Resolution is subject to (a) the entry of a Confirmation Order, (b) the Effective Date of the Plan, and (c) Class 9 voting to support the Plan.

If the S. Zeiger Avoidance Action Resolution is approved and effective, Mr. Zeiger will subordinate any Claims he may possess against the Debtors and Reorganized Debtors pending satisfaction of the S. Zeiger Contributions. Mr. Zeiger filed a proof of claim against the Estates in excess of $2,000,000.00.

This Plan will represent a request to approve the S. Zeiger Avoidance Action Resolution under Rule 9019 of the Bankruptcy Rules. The entry of the Confirmation Order shall constitute an order approving the S. Zeiger Avoidance Action Resolution. In the event the S. Zeiger Avoidance Action Resolution is approved, Mr. Zeiger and any party who received a Net 2-Year Payment or Net 1-Year Payment will be released from any liability on account of any Avoidance Action.

### 9.13   Objections to Claims

The Debtors and/or the Reorganized Debtors, as the case may be, shall pursue any objections to Claims.

### 9.14   Settlements

After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court. Any settlement or compromise of any Action or objection to Claim shall be subject to final approval of the Court and the standards applicable under Rule 9019.

### 9.15   Discharge of Debtors

The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Filing Date, against the Debtors and the Debtors in Possession, the Estates, or any of the assets or properties under the Plan. Except as otherwise provided herein, (i) on the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors and assigns, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall (a) release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtors, (b) shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order, or (c) shall release, discharge, enjoin or preclude any Claim that any Creditor may have against any non-debtor party who may be liable on any Claim with any of the Debtors, except as otherwise provided in the Plan.

31

### 9.16    Injunction Related to Discharge

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors and assigns of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property.  Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that any Creditor may have against any non-debtor party who may be liable on any Claim with any of the Debtors, except as otherwise provided in the Plan.

### 9.17    Injunction Against Interference with the Plan

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, members, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

### ARTICLE X

### CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 10.01    Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 10.04 of the Plan:

(i)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and shall include, among other things, a finding of fact that the Debtors, the Reorganized Debtors and their respective shareholders, members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii)    the Clerk of the Court shall have entered the Confirmation Order on the Docket.

**10.02  Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the following conditions have been satisfied or waived pursuant to Section 10.04 of the Plan:

(i)      The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(ii)      The statutory fees owing to the United States Trustee through the Effective Date shall have been paid in full; and

(iii)      All other actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtors and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

**10.03  Effect of Failure of Conditions**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtors made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtors, or (2) prejudice in any manner the rights of the Debtors, any Creditor or party in interest.

**10.04  Waiver of Conditions**

The Debtors may waive one or more of the conditions precedent to confirmation of the Plan set forth in Section 10.01 of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 10.02 of the Plan.  The Debtors may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

18513727v1 0920630 75377

(a)     to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)     to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors, Reorganized Debtors, or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)     to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, including, without limitation, any disputes arising under the Settlement; *provided, however,* venue of the foreclosure action involving the real estate owned by Dyer Road Property, LLC – as contemplated in the Settlement with People's – shall lie in Palm Beach County, Florida;

(k)     to recover all Assets of the Debtors and Property of the Estates, wherever located;

(l)     to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)     to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Cases, including, without limitation, any discharge, injunction, exculpation and releases provided for in the Plan;

34

18513727v1 0920630 75377

(n)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)      to hear any other matter not inconsistent with the Code; and

(q)      to enter a final decree closing the Cases; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Debtors under applicable environmental laws.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.01   Effectuating Documents and Further Transactions.

The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or other interests issued pursuant to the Plan.

### 12.02   Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Code, the issuance, transfer or exchange of notes or other interests under the Plan, including creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 12.03   Authorization to Request Prompt Tax Determinations.

The Debtors are authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtors, for all taxable periods through the Effective Date.

### 12.04   Exculpation.

**Subject to the occurrence of the Effective Date, and except as otherwise provided in the Settlement solely with respect to People's, neither the Debtors, the Reorganized Debtors or any of their respective partners, members, officers, directors, agents, financial advisors, attorneys, employees, holders of Equity Interests, partners, affiliates and representatives**

18513727v1 0920630 75377

(the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; *provided, however,* that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; *provided further* that the foregoing shall not operate as a waiver or release of Claims by (a) governmental entities arising under environmental laws, or (b) any Creditor against any non-debtor party who may be liable on any Claim with any of the Debtors, except as otherwise provided in the Plan.

### 12.05    Injunction Relating to Exculpation

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution against the Debtors, the Reorganized Debtors, and any other Person, whether derivatively or otherwise, of any Actions or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

### 12.06    Payment of Statutory Fees

The Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Reorganized Debtors shall file with the Court and serve on the United States Trustee a financial report regarding all income and disbursements, including all plan payments, for each required period (or portion thereof) the Cases remain open.

### 12.07    Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

### 12.08    Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.09    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtors or any other Person, an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### 12.10    Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns.

### 12.11    Notices

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors:**

Zeiger Crane Rental, Inc.
4651 Dyer Boulevard
Riviera Beach, Florida 33407

Atlantic Leasing, Inc.

18513727v1 0920630 75377

4651 Dyer Boulevard
Riviera Beach, Florida 33407

Dyer Road Property, LLC
4651 Dyer Boulevard
Riviera Beach, Florida 33407

**With copies to:**

Hinshaw & Culbertson, LLP
Attention: Michael D. Seese, Esq.
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, Florida 33301
Telephone No. (954) 467-7900

### 12.12    Governing Law

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 12.13    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtors and the Reorganized Debtors, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 12.14    Section 1125(e) of the Code

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtors and their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer under the Plan.

18513727v1  0920630 75377

### 12.15   Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.16   No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 12.17   Waiver of Bankruptcy Rule 3020(e) and 7062

The Debtors may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### 12.18   Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 12.19   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be Substantially Consummated under sections 1101 and 1127(b) of the Code.

### 12.20   Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Cases under section 1112(b)(7) of the Code after entry of the Confirmation Order if there is a default in performing the conditions to effectiveness of the Plan.  If the Court orders the Cases converted to Chapter 7 after the entry of the Confirmation Order, this Plan provides that property of the Debtors' Estates that have not been disbursed pursuant to the provisions herein will revest in the Chapter 7 estate and that the automatic stay will be reimposed upon the revested property to the extent that relief from the stay was not previously authorized by the Court during the pendency of the Cases.  The Confirmation Order may also be revoked under certain limited circumstances.  The Court may revoke the Confirmation Order if and only if such order was procured by fraud and if a party in interest brings a motion to revoke such Confirmation Order within 180 days after the entry of the Confirmation Order.

### 12.21   Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtors shall file a motion with the Court to obtain a final decree to close the Cases.

18513727v1 0920630 75377

### 12.22   Inconsistency

In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.  Notwithstanding anything in this Section 12.22 to the contrary, the Settlement shall prevail in the event of any inconsistency with the Plan.

### 12.23   No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Filing Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 12.24   Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 12.25   Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 12.26   No Penalty for Prepayment

The Debtors shall at any time be permitted to prepay, in whole or in part, any claim treated under this Plan.  Except as otherwise provided in the Settlement solely with respect to People's, neither the Debtors nor the Reorganized Debtors shall be liable for payment of any sum or interest in the form of a penalty relating to the partial or full prepayment of any claim treated under this Plan, as permitted herein.

### 12.27   Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 12.28   Remedy of Defects

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

18513727v1  0920630 75377

## ARTICLE XIII

## <u>CONCLUSION</u>

The foregoing provisions shall constitute the Plan of the Debtors.  This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtors, the Reorganized Debtors and all Creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Code.

18513727v1  0920630 75377

**ZEIGER CRANE RENTAL, INC.,** *et al.,*

**CASE NO. 11-14183-BKC-EPK (Jointly Administered)**

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

**[signature page]**

**ZEIGER CRANE RENTAL, INC.,**

By:_____
         Steve Zeiger, President

**ATLANTIC LEASING, INC.,**

By:_____
         Steve Zeiger, President

**DYER ROAD PROPERTY, LLC,**

By:_____
         Steve Zeiger, Sole Member

_____
Michael D. Seese (FBN 997323)
HINSHAW & CULBERTSON LLP
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone:  954-467-7900
Facsimile:  954-467-1024

42

18513727v1 0920630 75377